UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

MUSTAFA LEE,

      Plaintiff,

v.                                                    Case No. 4:19-cv-210-RH-HTC

CENTURION OF FLORIDA, LLC,
DR. BENJAMIN HASTY,
ALICE MOLSBEE,

      Defendants.

_____/

REPORT AND RECOMMENDATION

This matter is before the Court on Defendant Alice Molsbee's[1] Motion to
Dismiss, ECF Doc. 36, and Defendant Dr. Benjamin Hasty's Motion to Dismiss,
ECF Doc. 41. Plaintiff has responded to both motions (ECF Docs. 47 and 48). Upon
consideration, the undersigned recommends Molsbee's motion be GRANTED
because Plaintiff has failed to exhaust his administrative remedies as to his claim
against her and Dr. Hasty's Motion be DENIED.

I.      BACKGROUND

Plaintiff Mustafa Lee, an inmate of the Florida Department of Corrections
("FDOC") currently incarcerated at Wakulla Correctional Institution, proceeding

---

[1] Lee erroneously references Molsbee as a male doctor; Molsbee is a female nurse.

*pro se* and *in forma pauperis*, brings this action against Centurion of Florida, LLC, Dr. Benjamin Hasty, and Alice Molsbee for deliberate indifference to a medical need. ECF Doc. 23.

The relevant facts from Plaintiff's fourth amended complaint are summarized below, and assumed to be true for purposes of this report and recommendation.

In July 2015, while initially housed at Taylor Correctional Institute, Lee "began to experience headaches and blurry vision." ECF Doc. 23 at 5. Lee was seen by Dr. T. Lopez during routine sick calls for these issues. Dr. Lopez indicated Lee "was suffering from a 'visual disturbance.'" *Id.* On February 12, 2016, Lee was seen by another doctor, who recommended he undergo left eye surgery. *Id.* After a month of not receiving any treatment, Lee filed a formal grievance on March 16, 2016, while at Wakulla CI.[2] *Id.*

On March 28, 2016, Defendant Molsbee, the Health Administrator for Wakulla CI, denied Lee's formal grievance based on the optometrist's conclusion that Lee met his "[a]ctivities of daily living with [his] normally corrected vision in one eye." *Id.* It is this sole conduct that is at the heart of Lee's claim against Molsbee.

---

[2] Lee was transferred from Taylor CI to Wakulla CI Annex on March 1, 2016. See ECF Doc. 36-2 at 7.

Despite the denial of the grievance, Lee saw Dr. A. Scoggins and Dr. Kelli Parks on May 3, 2016. ECF. Doc. 23 at 6. Dr. Scoggins diagnosed Lee with bilateral cataracts and Dr. Parks indicated that Lee needed an "evaluation by ophthalmology." *Id.*

On August 10, 2016, Dr. Hasty performed routine cataract laser surgery on Lee's left eye at Reception and Medical Center in Lake Butler, Florida ("RMC"). *Id.* at 6. Seven days later on August 17, 2016, Lee was again seen by Dr. Hasty, who indicated on a CR/CR Form that "[Lee] needed to be seen in '1.5 weeks then taper off meds + do dilated retinal exam then.'" *Id.*

Lee returned for his follow up visit on August 23, 2016, and was seen by Dr. Maxon, who noted on a CR/CR form that Lee "needed to be seen by an ophthalmologist for follow up . . . and possible eye infection." *Id.* at 6-7. The form was labeled "urgent." *Id.* at 7. The form was also stamped by Dr. Ladel.

On November 17, 2016, Lee was seen by Dr. A. Acosta at Wakulla CI who noted that the surgery "'did not improve [his] vision.'" *Id.* On the same day, Lee also saw Dr. Parks again, who recommended Lee be referred "to a retinal specialist 'ASAP' and noted, "'Dr. Hasty had asked for follow up to R.M.C.'" *Id.*

Lee did not see Dr. Hasty again until December 2016. *Id.* During that visit, Dr. Hasty reported "'only now seen patient . . . I had asked for a dilated exam @

F/U, F/U did not occur.'"  *Id.*  As a result, Dr. Hasty referred Lee to Southern Vitreoretinal Associates in Tallahassee and marked Lee's file "Seen Urgent."  *Id.*

On March 6, 2017, Lee was seen by Dr. Ashmore at Southern Vitreoretinal Associates who diagnosed him with "total retinal detachment" in the left eye.  *Id.* at 7.  According to Lee, Dr. Ashmore told him "that had he been brought to her sooner after the surgery, she could have saved his left eye."  *Id.* at 8.

Based on the above allegations, Plaintiff alleges Molsbee "had an opportunity to initiate the appropriate standard of care that could have ultimately saved [his] vision in his left eye when [s]he received the initial grievance …."  *Id.* at 12.  He claims that Molsbee's "failure to act ultimately resulted in the violation of [his] constitutional right," was deliberately indifferent to a serious medical need, and "set in motion a series of events [that] [s]he knew, or should have reasonably known, would cause a constitutional violation."  *Id.*

With regard to Dr. Hasty, Lee alleges that Dr. Hasty "did not initiate the process" for him to be seen by an outside retinal specialist until four (4) months after the surgery was performed.  *Id.* at 11.  He alleges Dr. Hasty failed to take such action even though Dr. Maxon warned of a possible eye infection just days after the surgery.  *Id.*  Based on this alleged failure, Lee alleges. Dr. Hasty "demonstrated deliberate indifference."  *Id.*  Lee also alleges that Dr. Hasty's "negligence during

the surgical procedure that set the symptoms in motion that ultimately caused the blindness in [his] left eye." *Id.* at 12.

## II.    MOLSBEE'S MOTION TO DISMISS

Molsbee has moved to dismiss on the following grounds:  (1) failure to state a claim; (2) qualified immunity; (3) lack of a more than *de minimis* physical injury as necessary to recover compensatory or punitive damages; and (4) failure to exhaust.

The sole basis of Lee's written response to the motion is that the motion should be stricken because the undersigned stated in a prior report and recommendation that Lee had set forth facts against Molsbee sufficient to overcome a motion to dismiss.   ECF Doc. 47.   Lee's reliance on that prior report and recommendation (which was issued on a motion to dismiss filed by Centurion of Florida, LLC) is misplaced.

First, any conclusions made in the motion are not the law of the case and may be revisited by the Court.  *See In re Palm Beach Finance Partners, LP*, 488 B.R. 758, 768 (Bankr. S.D. Fla. 2013) ("law of the case doctrine only applies when the law arose from a final judgment") (citing *Gregg v. U.S. Industries, Inc.,* 715 F.2d 1522, 1530 (11th Cir. 1983)).   Second, and more importantly, neither the undersigned (nor the Court in accepting the report and recommendation) made any determinations regarding whether Lee had exhausted his administrate remedies, a

prerequisite to filing suit. Indeed, because the undersigned finds the issue of exhaustion to be dispositive, the undersigned addresses only that ground for relief as to Molsbee.

## A.    Legal Standard – Failure To Exhaust

The defense of failure to exhaust should be treated as a matter in abatement. *See Bryant v. Rich*, 530 F.3d 1368, 1374 (11th Cir. 2008). "This means that procedurally the defense is treated 'like a defense for lack of jurisdiction,' although it is not a jurisdictional matter." *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008) (quoting *Bryant*, 530 F.3d at 1374). Because exhaustion is a matter in abatement, "it should be raised in a motion to dismiss or be treated as such if raised in a motion for summary judgment." *Bryant*, 530 F.3d at 1374-75 (citation and internal quotation omitted).

When deciding a motion to dismiss for failure to exhaust administrative remedies, the Court uses a two-step process. *Turner*, 541 F.3d at 1082. "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's versions of the facts as true. If in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id.*

"If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make

specific findings in order to resolve the disputed factual issues related to exhaustion." *Id.* It is the defendant's burden to prove "that the Plaintiff has failed to exhaust his available remedies." *Id.*

**B.    Discussion**

As will be discussed below, after reviewing the grievances and appeals filed by Lee, the undersigned finds Plaintiff failed to exhaust his administrative remedies with regard to his claim against Molsbee. None of the grievances or appeals mention Molsbee by name, or even generally. None complain about a denial of a grievance in March 2016, which is the very crux of Lee's claim against Molsbee. None complain, even generally, about any delay in medical treatment for Lee's eyes between March 2016 and August 2016, when Lee had his surgery.

Instead, the only complaints raised by Molsbee in the grievances and appeals were that (1) he did not get a follow up doctor's visit with another surgeon after Dr. Hasty performed surgery on him in August 2016 and (2) that Dr. Hasty negligently performed the surgery. Thus, the undersigned recommends Lee's claims against Molsbee be dismissed.

**1.    Exhaustion Under The Prison Litigation Reform Act**

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional

facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of all available administrative remedies is a mandatory pre-requisite to filing suit that federal courts "have no discretion to waive." *Rich*, 530 F.3d at 1373. A court must dismiss an action if it is satisfied that an inmate failed to properly exhaust his available administrative remedies before filing suit. *See Higginbottom v. Carter*, 223 F.3d 1259, 1261 (11th Cir. 2000).

The process of having a prisoner exhaust his administrative remedies "gives an agency the opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. Thus, "[t]he PLRA exhaustion requirement requires *proper* exhaustion." *Id.* at 93 (emphasis added). Proper exhaustion "means using all steps that the agency holds out and doing so properly (so that the agency addresses the issues on the merits)." *Id*. at 90 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)).

While the grievance process may "vary from system to system and claim to claim . . . it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 219 (2007). The grievance procedure that must be followed is determined by the agency – here, the FDOC. *See Jones*, 549 U.S. at 218. The FDOC's grievance procedures generally

require an inmate to: (1) file an informal grievance with a designated prison staff member, (2) file a formal grievance with the warden's office, and then (3) submit an appeal to the Office of the Secretary.   *See* Fla. Admin. Code r. 33-103.005 to 33-103.007; *see also Parzyck v. Prison Health Servs., Inc.*, 627 F.3d 1215, 1218 (11th Cir. 2010).   For complaints regarding medical treatment, an inmate may bypass the informal grievance step.   *See* Fla. Admin. Code r. 33-103.005(1).   Additionally, the grievance procedures require that each grievance address one issue.   Fla. Admin. Code 33-103.005(2)(b).

As to the level of specificity required, "the only requirement established by [the FDOC] is that the inmate shall ensure that the form is legible, that included facts are accurately stated, and that only one issue or complaint is addressed at a time." *Id.* (quoting Fla. Admin. Code R. 33-103.005(2)(b)) (internal quotations omitted). As such, the FDOC's rules "mandate[] no level of detail at all, requiring only that whatever facts are stated must be true." *Goldsmith v. White*, 357 F. Supp. 2d 1336, 1339 (N.D. Fla. 2005).   However, "allowing claims to proceed without any level of detail would thwart the purpose of the PLRA's exhaustion requirement, which is to put administrative authority *on notice of all of the issues* in contention and allow the authority an opportunity to investigate those issues." *Harvard v. Inch*, 411 F. Supp. 3d 1220, 1244 (N.D. Fla. 2019) (emphasis added).   The Eleventh Circuit has held that the PLRA "requires a prisoner to provide in his administrative grievance as

much relevant information about his claims, including the identity of those directly involved . . . as the prisoner reasonably can provide." *Brown v. Sikes*, 212 F.3d 1205, 1210 (11th Cir. 2000).

  2. <u>Plaintiff's Grievances</u>

  As stated above, Plaintiff does not address the failure to exhaust argument in his written response. Thus, the undersigned takes as undisputed the following grievances and appeals, which were attached to Molsbee's motion to dismiss.[3]

  As alleged in his complaint, on March 16, 2016, Lee filed a formal grievance with the Warden regarding "a serious debilitation affecting" his vision. ECF Doc. 36-2 at. 7. Specifically, Lee complained, that since his transfer to Wakulla CI, he had not met with a doctor despite "having a 100% legitimate reason to have eye surgery." *Id.* Lee requested an administrative remedy "by means" of having his eyes "checked, evaluated, assessed, and repaired by a licensed optometrist." *Id.*

  Also, as Lee points out, on March 28, 2016, Molsbee denied the grievance because "[she] did see where the optometrist did send a consult to the regional medical director and noted . . . that you meet your [a]ctivities of daily living with your normally corrected vision in one eye." *Id.* at 6. Molsbee also stated Lee was "scheduled with the clinician to discuss this soon." *Id.* Because it is the denial of

---

[3] Molsbee also includes as attachments to her motion grievances and an appeal that are unrelated to Lee's eye issues. Because those grievances and appeal relate to other medical issues which are not relevant to Lee's claims here, the undersign has not included them in her discussion.

this grievance that forms the basis of Lee's deliberate indifference claim against Molsbee, this grievance clearly could not have put the FDOC on notice of Lee's deliberate indifference claim against Molsbee.

On the same day, Lee filed a second formal grievance complaining about a cancelled doctor's appointment due to a "massive shakedown" at the compound. *Id.* at 10. Lee requested his appointment with the physician's assistant be rescheduled "asap." *Id.* Lee's grievance was denied on April 11, 2016, because he was "rescheduled to see the Clinician." *Id*. at 9. Like the first March grievance, this grievance is clearly not about Molsbee's conduct since Molsbee had not yet denied the grievance.

Regardless, Lee did not file an appeal of the March grievances. Thus, even if the March grievances had contained any reference to Molsbee, they are nonetheless insufficient to exhaust Lee's administrative remedies. *Bryant*, 530 F.3d at 1378, citing *Johnson v. Meadows*, 418 F.3d 1152, 1158 (11th Cir. 2005) (To exhaust administrative remedies in accordance with the PLRA, prisoners must "properly take each step within the administrative process."); *Wallace v. Hanratty*, 2010 WL 680342, at *5 (N.D. Fla. Feb. 18, 2010) ("Plaintiff is required not only to initiate the grievance process, but to exhaust it, that is he must take the process to the highest appeal level.").

Lee did not file another grievance or administrative appeal regarding his eye until 2018, two years *after* his left eye surgery was performed in August 2016. Beginning in August 2018, Lee filed the following two (2) additional formal grievances and (3) additional appeals.[4]   As discussed below, however, those grievances and appeals are also insufficient to exhaust Lee's administrative remedies.

On August 13, 2018, Lee filed an administrative appeal stating he is "blind in [his] left eye due to medical negligence" from his surgery. ECF Doc. 36-1 at 7. Lee further complained he had not been scheduled for a second opinion after the surgery despite receiving a doctor's referral to see an eye specialist and filing a medical request. *Id.* Additionally, Lee asserted that the "woman doctor" at the eye specialist concluded the "D.O.C. waited too long [and] if [she] had seen [him] sooner [she] could've saved [his left] eye." *Id.* As such, the "woman doctor" recommended Lee

---

[4] Molsbee also argues the 2018 grievances and appeals are untimely and thus do not exhaust Lee's claims against her because they were filed more than fifteen (15) days from the denial of the March 2016 grievance. *Mann v. Perez*, 2019 WL 8160987, at *2 (N.D. Fla. Dec. 27, 2019), *report and recommendation adopted in part*, 2020 WL 1062995 (N.D. Fla. Mar. 5, 2020), citing Fla. Admin. Code R. 33-103.011(1)(b) (formal grievances (including direct formal grievances of a medical nature) must be received "no later than 15 calendar days" from either: (1) the date on which the informal grievance was responded to; or (2) the date on which the incident or action being grieved occurred if an informal grievance was not filed"). However, none of the grievances or appeals were returned or denied based on untimeliness. Thus, Molsbee cannot complain about their untimeliness here. *Shaw v. Scoggins*, 2018 WL 2746593, at *2 (N.D. Fla. May 7, 2018), *report and recommendation adopted sub nom. Shaw v. Mr. Scoggins, P.A.*, 2018 WL 2745907 (N.D. Fla. June 7, 2018) ("Because prison officials did not conclude that Plaintiff's grievances were untimely and refuse to address the claim on the merits, this Court should not do so either.").

"sue the D.O.C and the provider." *Id.* Lee ultimately requested to be transferred to Everglades Incentivized Prison for "a better environment" and to have an appointment scheduled with an eye specialist. *Id.*

Neither Molsbee nor her denial of the March grievance is mentioned in this appeal. Instead, the appeal focused solely on the need for a follow-up after the August surgery.

Also, on August 30, 2018, the appeal was returned without further processing for failure to provide "a copy of the formal grievance filed at the institutional level as required by" Chapter 33-103.006. *Id.* at 10. Lee was advised he had fifteen (15) days from the date of the response to properly re-submit his grievance. *Id.* Lee, however, did not adequately resubmit this grievance. Instead, the appeal he re-submitted on September 18 was also noncompliant and was denied on October 4 as deficient for failure to include a copy of the formal grievance or a valid reason for bypassing the formal grievance procedure. ECF Doc. 36-1 at 8.

Lee was given another fifteen (15) days to resubmit his appeal, but did not do so. Thus, even if the August 2018 appeal (and September 2018 resubmission) included anything about Molsbee, neither of those appeals are sufficient to exhaust Lee's administrative remedies because neither complied with the FDOC rules and both were rejected for that reason. *See e.g., Young v. Inch*, 2020 WL 3809044, at *6 (N.D. Fla. June 4, 2020) ("A grievance that is returned for failure to comply, such

as Plaintiff's grievances cannot serve as an exhaustion of administrative remedies."),
*report and recommendation adopted*, 2020 WL 3806293 (N.D. Fla. July 7, 2020).

Before receiving a response to the September 18, 2018 appeal, and instead of filing another direct administrative appeal, Lee filed a formal grievance on September 28, 2018.  ECF Doc. 36-2 at 14.  Just as with the noncompliant appeals, Lee complained about the FDOC's failure to "timely return [him] to visit with Dr. Hast[y] despite [his] complaints after the aforementioned surgery" and despite Dr. Hasty's order that he receive "a follow-up visit with him within 30 days."  *Id.*  Lee further complained that the FDOC's failure to timely return him "to visit with Dr. Hast[y], or refer [him] to an ophthalmologist who was capable of assessing the need for *post surgery* treatment to prevent permanent blindness in [his] left eye constituted deliberate indifference."  *Id.*  (emphasis added).

Notably, although Lee starts this grievance by stating that since August 2015, he repeatedly complained about the blurred vision to his left eye to the medical department through sick calls and further tells the Warden that a doctor at Taylor CI diagnosed him with cataract in his left eye, he does not mention having filed the March 2016 grievance or that grievance having been denied.  Instead, he goes straight into his surgery on August 10, 2016.  Thus, despite including a chronology of events leading up to the surgery, Lee does not mention Molsbee, her conduct, or any delay in getting the cataract surgery.

The September 28, 2018 formal grievance was denied because Lee had an "upcoming appointment to see the eye specialist to have [the] issue addressed." ECF Doc. 36-2 at 13. Lee did not appeal the denial. Thus, even if this grievance contained any complaint about Molsbee or her conduct, it would not be sufficient to exhaust Lee's administrative remedies. *See Newman v. Izuegbu*, 2016 WL 1598661, at *6 (N.D. Fla. Jan. 12, 2016) ("[a] grievance that is returned without action because the grievance was not in compliance with the grievance procedures is insufficient to show exhaustion of administrative remedies") (citing *Joseph v. Gorman*, 2012 WL 4089012, at *6 (N.D. Fla. Mar. 12, 2012) (noting that a response that returns the grievance without action or finding it to be noncompliant does not exhaust administrative remedies)).

Instead of appealing the denial of the September 28 grievance, Lee filed another formal grievance on November 14, 2018, asserting that he was by-passing the informal grievance stage due to the medical nature of his grievance. ECF Doc. 36-1 at 14. Lee stated that although he was required to attend a follow up visit after the August 2016 surgery, he was not seen by the surgeon within 30 days. He says he wrote medical about headaches and blurry visions post-surgery and that he was only told he had an appointment and to be patient. He once again alleges that an outside doctor told him he has permanent blindness in his left eye caused by not having a timely "follow-up visit after cataract surgery." *Id.*

It is clear that Lee's complaint in the November 14 grievance is about what happened after his surgery and not about anything that happened prior to this surgery. Thus, although Lee states, generally, in the grievance that he is "grieving the fact that my disability was caused by the negligence of medical staff who failed to timely act in a reasonable matter consistent with my complaints," that alleged "negligence" was about not getting a follow up visit with a surgeon within 30 days. Indeed, in addition to monetary relief, Lee sought in the grievance "to have the medical department implement a written procedure addressing issues related to post-cataract surgery to insure that this tragedy does not occur to any other inmate." *Id.* at 15.

Lee's grievance was denied on November 27, 2018 because the Chief Health Officer concluded that Mr. Lee's "[b]lindness does not come from a lack of follow up appointment." *Id.* at 13. Nonetheless, the Chief Health Officer placed Lee "on the callout to be seen within the next 7-10 business days" so he could "get a better understanding" of his condition. *Id.*

On December 9, 2018, Lee filed an appeal of the November 27 denial. *Id.* at 12. Lee complained that the Chief Health Officer's response was contradictory to the "outside doctor's" conclusion "that had the medical department conducted proper follow-up measures after . . . surgery, [his] blindness could have been prevented." *Id.* Additionally, Lee stated that the Chief Health Officer's response

did not address the "lack of attention given to [his] complaints about headaches and blurry vision" that resulted post-operation.  *Id.*

Lee once again references the "negligence of medical staff," which he stated was "confirmed by the outside doctor."  ECF Doc. 36-1 at 12.  Lee's reference to the outside doctor is a clear indication that the negligence aggrieved is conduct occurring after his August 2016 surgery.  Specifically, Lee stated in the grievance that the outside doctor, Dr. Ashmore, said there is nothing she can to do return his sight "because the medical personnels at Wakulla CI took too long to bring me to visit her." ECF Doc. 36-2 at 14.  Lee had no reason to go to Dr. Ashmore until after the surgery with Dr. Hasty.  Thus, this grievance (and the appeal of the grievance) makes no reference to Molsbee or any conduct occurring prior to the August 2016 surgery.

On January 7, 2019, the appeal was denied because the Chief Health Officer "appropriately address[ed] the issues [Lee] presented."  *Id.* at 11.  Lee's appeal was further denied because he was afforded an opportunity to address his medical concerns when he was seen by the Clinician.  *Id.*  The denial also advised Lee that he could not use the grievance process for monetary gain and "sick call is available so that [he] may present [his] concerns to [the] health care staff."  *Id.*

3.     Plaintiff Failed to Properly Exhaust his Administrative Remedies as to Molsbee

As shown above, Lee does not take issue in his grievances or appeals with Molsbee (or anyone) having denied his grievance in March 2016.  Also, he takes no issue in his grievances or appeals with any delay in getting to the August 2016 surgery.  Nowhere does Lee complain that Molsbee's denial of his grievance led to a total ban of treatment or a delay in surgery which contributed to his blindness, such as he alleges against her in his Fourth Amended Complaint.  Conversely, Lee's grievances repeatedly allege his blindness "was caused by the failure to conduct a timely follow-up visit *after* the cataract surgery," and not because Molsbee did not grant his grievance in 2016.  ECF Doc. 36-1 at 14.  With the exception of the grievance that Molsbee denied, *all* Lee's grievances related to his eye deal with the surgery and lack of a follow up *after* surgery.

"It is well established that the basis for . . . exhaustion is to give prison officials a fair opportunity to address a problem pointed out to them" and to allow them an opportunity to resolve the problem before being hauled into federal court."  *Young v. McNeil*, No. 4:08CV44-SPM/WCS, 2009 WL 2058923, at *5 (N.D. Fla. July 13, 2009).  Lee's grievances, however, fail to "identify the problem . . .  or mention the core facts on which his claim [is] based."  *Goldsmith*, 357 F. Supp. 2d at 1340.  The grievances certainly did not afford the FDOC an opportunity to resolve any such problems.  *See Martinez v. Minnis,* 257 F. App'x 261, 265 n. 5 (11th Cir. 2007)

(finding prisoner who filed grievance concerning placement in special housing unit failed to exhaust retaliation claim because grievance "did not mention retaliation or use any words synonymous with or indicating retaliation, nor did it provide the BOP with notice of allegedly retaliatory action or the opportunity to correct it").

A plaintiff must exhaust his available administrative remedies as to *each claim* and *each party* set forth in his complaint. *See Martinez*, 257 F. App'x at 265 n. 5. As the grievances and appeals above make clear, Lee's grievances fail to meet both these requirements. Lee did not aggrieve any wrongful conduct relating to Molsbee. Indeed, nowhere in his nearly ten (10) pages of grievances does Lee refer to Molsbee by name or even generally to her conduct. And, more importantly, he certainly does not mention Molsbee, the denial of the March grievance, or any delay in medical treatment prior to the surgery in the November 14 grievance, which is the *only* grievance which complied with the FDOC procedures and followed all the steps provided for in the FDOC rules.

This is not a situation where the Court must determine whether a plaintiff has said enough as this Court had to do in *Goldsmith* and *Harvard*. Instead, Lee has said nothing about Molsbee or her conduct in his grievances. Thus, the undersigned recommends Molsbee's motion to dismiss be granted.

## III.    DR. HASTY'S MOTION TO DISMISS

Dr. Hasty argues his failure to ensure Lee received follow-up care, even if assumed true, does not rise to the level of deliberate indifference under the Eighth Amendment.[5]  He also argues any claim of negligence based on the surgery is barred by the two year statute of limitations.  As an initial matter, Lee responds that he is not alleging a separate claim of negligence.  ECF Doc. 48.  Regardless, the undersigned agrees that any such claim is time-barred under Florida Statute § 95.11 (requiring actions for medical malpractice to be brought within 2 years from the time of the incident or 2 years from the time the incident is discovered, or should have been discovered with the exercise of due diligence).

### A.    Legal Standard

When evaluating a motion to dismiss under Rule 12(b)(6), the question is whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

---

[5] Dr. Hasty also states in a footnote that he adopts and incorporates Molsbee's failure to exhaust arguments.  As discussed above, the only grievance Lee filed which complied with the FDOC's regulations is the November 2018 grievance.  That grievance alleged that medical staff failed to act in a timely manner after the surgery and thus is sufficient to exhaust Lee's claim against Dr. Hasty.

alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). However, "[l]abels and conclusions" or "a formulaic recitation of the elements of a cause of action" that amount to "naked assertions" will not suffice. *Id*. (quotations and citation omitted). Moreover, a complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Roe v. Aware Woman Ctr. for Choice, Inc*., 253 F.3d 678, 683 (11th Cir. 2001) (quotations and citations omitted).

Also, in considering a motion to dismiss for failure to state a claim, the Court reads Plaintiff's *pro se* allegations in a liberal fashion, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972), and accepts "[a]ll well-pleaded facts in plaintiff's complaint and all reasonable inferences drawn from those facts . . . as true." *McGinley v. Houston*, 361 F.3d 1328, 1330 (11th Cir. 2004) (citation omitted).

## B.   Deliberate Indifference

"The Eighth Amendment forbids punishments that are cruel and unusual in light of contemporary standards of decency." *Hernandez v. Fla. Dep't of Corr.*, 281 F. App'x 862, 865 (11th Cir. 2008). The Supreme Court has interpreted the Eighth Amendment as including a prohibition against "deliberate indifference to an inmate's serious medical needs…." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). However, "[m]edical treatment violates the Eighth Amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be

intolerable to fundamental fairness.' Mere incidents of negligence or malpractice do not rise to the level of constitutional violations." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (internal citations omitted).

To prevail on an Eighth Amendment deprivation of medical care claim, a prisoner must prove three (3) elements: (1) a serious a medical need; (2) the defendant's deliberate indifference to that need; and (3) causation. *Mann v. Taser Int'l, Inc.,* 588 F.3d 1291, 1306-07 (11th Cir. 2009). To establish the first element, a plaintiff must demonstrate "an objectively serious medical need" so grave that, "if left unattended, [it] poses a substantial risk of serious harm." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (internal quotation marks, alterations, and citations omitted). Dr. Hasty does not dispute that Lee suffered from a serious medical need which required surgical treatment. *See also Weston v. Estes*, No. 514CV00051AKKHGD, 2015 WL 4999701, at *5 (N.D. Ala. Aug. 21, 2015) (finding that "the cataracts in [Plaintiff's] left eye constitute[d] a serious medical need"). Thus, there is no dispute as to the first element.

The second element requires "a subjective intent by the public officials involved to use the sufficiently serious deprivation in order to punish." *Taylor*, 221 F.3d at 1258. Lee must sufficiently allege: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence." *Bingham v. Thomas*, 654 F.3d 1171, 1176 (11th Cir. 2011) (citing

*Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004)). The undersigned finds that while Lee may not ultimately be able to prove the elements of deliberate indifference, he has sufficiently alleged the existence of those elements.

Lee alleges he was diagnosed with bilateral cataracts in his left eye and Dr. Hasty performed cataract surgery on him. Lee alleges Dr. Hasty saw him a week later and noted Lee needed another follow-up visit in 1.5 weeks and a dilated retinal exam. Those allegations are sufficient to show that Dr. Hasty was subjectively aware of a risk of serious harm to Lee if he did not have a retinal exam. Lee alleges Dr. Hasty failed to take any steps to ensure Lee received the retinal exam and did not follow-up with him until December 2016. Lee further alleges during that December 2016 visit, Dr. Hasty noted he had asked for a retinal exam and a follow-up, neither of which occurred, and immediately referred him to an outside doctor with a file marked "seen urgent." Those allegations are sufficient to show Dr. Hasty, knew of the seriousness of the risk, disregarded that risk, and was able to ensure the appropriate follow up was provided.

Thus, the undersigned finds Lee has alleged facts sufficient to overcome a motion to dismiss as to Dr. Hasty. *See McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010) (finding delays in referring plaintiff to a dentist, oral surgeon, and ENT specialist over several months while plaintiff was in significant pain sufficient to state a claim for deliberate indifference); *Rhiner v. Sec'y, Fla. Dep't of Corr.*, 696 F.

App'x 930, 932 (11th Cir. 2017) (reversing the district court's decision to dismiss claims because "[t]hough [plaintiff]'s serious medical need was follow-up wound care rather than the original medical emergency, the unexplained lack of medical treatment he received from September 11 to September 22 at Okeechobee and from September 25 to October 1 at South is sufficient to state a claim for deliberate indifference under § 1983").

## IV.   CONCLUSION

For the reasons set forth above, under step one of the *Turner* analysis, the undersigned finds that Lee failed to exhaust his administrative remedies as to Molsbee.  The undersigned also finds that Lee has stated facts sufficient to state a claim of deliberate indifference against Dr. Hasty.

Accordingly, it is respectfully recommended that

1.   Defendant Molsbee's Motion to Dismiss (ECF Doc. 36) be GRANTED for failure to exhaust.

2.   Judgment be entered in favor of Defendant Molsbee.

3.   Defendant Hasty's Motion to Dismiss (ECF Doc. 41) be DENIED.

4.   This case be remanded to the undersigned's chambers for further action.

At Pensacola, Florida, this 23rd day of November, 2020.

*/s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**