UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

MUSTAFA LEE,

     Plaintiff,

v.                                      Case No. 4:19cv210-RH-HTC

CENTURION OF FLORIDA, LLC, et al.,

     Defendants.

_____/

ORDER and
REPORT AND RECOMMENDATION

This matter is before the Court on Defendant Dr. Benjamin Hasty's ("Dr. Hasty") "Motion for Final Summary Judgment" (ECF Doc. 74) and Defendant Centurion of Florida, LLC's ("Centurion") "Motion for Summary Judgment" (ECF Doc. 75) with supporting memoranda. (ECF Docs. 73, 76). Plaintiff, Mustafa Lee ("Plaintiff" or "Lee"), filed a response in opposition to each motion (ECF Docs. 78, 79) as well as two personal declarations (ECF Docs. 80, 81), and Defendants filed a reply, also seeking to strike the declarations. ECF Docs. 82, 83. The matter was referred to the undersigned Magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(C).

Upon review and consideration of the parties' submissions and relevant law, the undersigned recommends that (1) Dr. Hasty's Motion for Final Summary Judgment be GRANTED and (2) Centurion's Motion for Summary Judgment be DENIED.

Additionally, the Defendants' motions to strike are DENIED.  Instead, the Court will give the allegations in the Lee's declarations due weight based on whether the statements are conclusory or lack personal knowledge.  *See Edmondson v. Caliente Resorts, LLC*, No. 8:15-cv-2672-T-23TBM, 2017 WL 8948389, at *4 (M.D. Fla. Apr. 7, 2017) (noting that, to the extent challenged declarations contained conclusions, "the presiding judge is fully capable of ignoring such legal conclusions in performing his review of the summary judgment motions").

## I.    BACKGROUND

Lee is an inmate of the Florida Department of Corrections ("FDOC"), currently confined at Everglades Correctional Institution.  However, at the time Lee initiated this action, he was incarcerated at Wakulla Correctional Institution ("Wakulla CI").  ECF Doc. 23 at 5.

Lee sues for violations of his Eighth Amendment rights.  In March 2017, Lee was diagnosed by a retinal specialist with a total retinal detachment in his left eye, which could not be surgically repaired.  Lee, thus, has no vision in his left eye.  Lee alleges Dr. Hasty, an outside ophthalmologist, who performed cataract surgery on

Lee's left eye in August 2016 and who referred him to have a retinal dilated examination post-surgery, was deliberately indifferent for failing to ensure the examination was performed and in failing to refer him to a retinal specialist until December 2016. Lee also sues Centurion, the medical provider for the FDOC, for having a policy, practice or procedure of delaying crucial medical treatment or denying medical care to inmates.

As discussed below, the Undersigned finds a lack of evidence from which any reasonable juror could find that Dr. Hasty acted with deliberate indifference. To the contrary, the undisputed evidence shows that Dr. Hasty responded reasonably to Lee's eye conditions and that it was not Dr. Hasty's responsibility to follow up with the prison ophthalmologist to ensure his recommendations were carried out. Thus, Dr. Hasty's motion should be GRANTED.

The Undersigned finds, however, that genuine issues of material fact exist as to whether Centurion had a custom or policy of delaying medical treatment, particularly treatment involving an outside specialist, for nonmedical reasons. Thus, Centurion's motion should be DENIED.

## II.    SUMMARY JUDGMENT STANDARD

To prevail on a motion for summary judgment, a defendant must show that the plaintiff has no evidence to support his case or present affirmative evidence that plaintiff will be unable to prove his case at trial. *Celotex Corp. v. Catrett*, 477 U.S.

317, 322–23 (1986).  If a defendant successfully negates an essential element of plaintiff's case, the burden shifts to plaintiff to come forward with evidentiary material demonstrating a genuine issue of fact for trial.  *Id.*  The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.* at 248.  A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Id.*  Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, (1986), and a "scintilla" of evidence and conclusory allegations are insufficient.  *Celotex Corp.*, 477 U. S. at 324; *Young v. City of Palm Bay, Fla.*, 358 F.3d 859, 860 (11th Cir. 2004).

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary judgment is not appropriate if a reasonable jury could return a verdict in favor of the non-moving party.  *See Kernel Records,* 694 F.3d 1294, 1300 (11th Cir. 2012).

### III.   UNDISPUTED FACTS[1]

On May 5, 2016, PA Scoggins evaluated Lee at Wakulla CI and determined Lee was in "significant need for referral for cataract eval[uation]" for "rapid cataract progression", which was not "normal for his age."  ECF Doc. 75-3 at 20.  Scoggins set up an appointment for Lee with an optometrist on that date for June 7, 2016.  *Id.*

On June 7, 2016, Lee was evaluated by Dr. Parks, a certified optometrist.  *Id.* at 21.  Dr. Parks observed Lee had a "dense cataract" in his left eye, significant cataract in his right eye, "no view" in his left eye "through [the] cataract," and that Lee's vision was worsening.  *Id.*  Dr. Parks recommended an "evaluation by ophthalmology."  *Id.*  The next day, PA Scoggins completed an ophthalmology consult request, and an appointment was initially made for July 5, 2016, but then rescheduled for July 20, 2016.  ECF Doc. 75-3 at 29.

On July 20, 2016, Lee was seen by Dr. Hasty.  *Id.* at 30, 69.  Dr. Hasty is a board-certified ophthalmologist who contracted with an entity called National Eye Care, which in turn contracted with Centurion, to provide specialty and surgical eye care and treatment to FDOC inmates.  ECF Doc. 73-1 at 2.

---

[1] The following facts are taken from Lee's Fourth Amended Complaint (ECF Doc. 23), the undisputed medical records, and the declarations submitted by Defendants (ECF Docs. 73, 74, 75, 76), and Plaintiff (ECF Doc. 80, 81).  Also, because Centurion did not provide health care to Wakulla CI (or Taylor CI, where Plaintiff was incarcerated when his vision issues began) until May 1, 2016, the facts prior to that date are irrelevant for purposes of these motions and, thus, not included.

Dr. Hasty noted that Lee was a 33-year-old inmate who was referred for a bilateral cataract consult. ECF Doc. 75-3 at 30. Dr. Hasty determined there was "no view at all" of Lee's left optical disc and "warned" Lee that there was "no view" of his left "retina," which "could be pathology" based. *Id.* Due to Lee's age, Dr. Hasty was "concern[ed] over [the] unilateral cat[aract]" in Lee's left eye and recommended "pharo," phacoemulsification, surgery "in 2 months." *Id.*

At that time, Lee had little vision in his left eye and could only see "hand motion", indicating he had essentially lost all vision in that eye. ECF Doc. 73-1 at 4; 73-2 at 2. Dr. Hasty documented his findings on a "Consultant's Report," which stated that "NO PROCEDURE(S) MAY BE PERFORMED WITHOUT PRIOR APPROVAL BY THE REGIONAL MEDICAL DIRECTOR or UTILIZATION MANAGEMENT." ECF Doc. 75-3 at 30. The Report is also preprinted with the statement: "IT IS ABSOLUTELY NECESSARY THAT INMATES ARE NOT MADE AWARE OF ANY SCHEDULING INFORMATION PENDING ANY APPOINTMENT OUTSIDE THE INSTITUTION." *Id.*

Dr. Hasty determined the best course of action was to proceed with surgery to remove the cataract because it could improve the vision, and even if not, it would allow for a better view of the retina to determine if an underlying, chronic retinal issue existed. ECF Doc. 73-1 at 5. Dr. Hasty subsequently submitted a "prior approval" request for the recommended cataract surgery. ECF Doc. 75-3 at 69.

On August 10, 2016, Dr. Hasty performed cataract surgery on Lee's left eye. *Id.* at 12. The following day, August 11, Dr. Hasty conducted a post-op evaluation of Lee and determined "there was a "1 + edema" and that Lee's "PC IOL," posterior chamber intraocular lens, looked "good," and vision in the left eye was hand motion. *Id.* at 25; ECF Doc. 73-1 at ¶ 12 & Exh. 3 at p. 18. Although Dr. Hasty did not find it necessary to refer Lee to a retinal specialist at that time he directed that Lee be "see[n] in OD (Optometry) clinic 1.5 weeks & then taper meds [and] [d]o dilated retinal exam at that visit." *Id.*

On August 17, 2016, Lee was seen by optometrist, Dr. Maxon, who noted that Lee "was compliant with meds." ECF Doc. 75-3 at 28. Dr. Maxon was "unable to see" Lee's left macula. *Id.* Dr. Maxon recommended Lee be seen in 1 week for an additional follow up. *Id.*

On August 23, 2016, Lee was seen by ophthalmologist, Dr. Schlofman, for a "post op [follow up]" of his left eye. *Id.* at 31. Dr. Schlofman reported that Lee's cataract surgery appeared fine and his "PC IOL," was "centered." *Id.* Dr. Schlofman also recommended Lee be seen by Dr. Hasty for a follow up. *Id.*

A consultation report completed by the Medical Director on the same day states that "per Dr. Maxon" Lee "needs to be seen in opto for" follow up and "possible eye infection." ECF Doc. 75-3 at 32. The Director marked the request as "Urgent." *Id.*

Lee, however, did not get any treatment until almost three (3) months later, despite the urgent notation until November 16, 2016, when Lee was seen by Dr. Parks, who noted that the "cataract surgery [on the left eye] did not improve" Lee's vision and there "may be posterior vitritis/retinal detachment."  ECF Doc. 73-10 at 33.  Dr. Parks, however, was "unable to get a full view" of Lee's left eye and, thus, asked that Lee be "refer[ed] to retinal specialist ASAP to evaluate" his left eye and consider cataract surgery for his right eye because Lee had "nonfunctional vision." *Id.*  Dr. Parks also noted "Dr. Hasty had asked for follow up to RMC."  *Id.*  The next day, Dr. Acosta requested authorization for Lee to be seen by Dr. Hasty and marked the request "Urgent."  *Id.* at 37

Another month passed by, and on December 16, 2016, Lee was transferred back to RMC to see Dr. Hasty.  *Id.* at 39.  During this visit, Dr. Hasty determined Lee had a chronic retinal detachment in his left eye that was "only now seen [after]" the removal of a mature cataract a few months earlier, but which "likely pre existed" the cataract surgery.  *Id.*  Dr. Hasty noted he "had asked for dilated exam @ 1 week [post-op] visit [which] did not occur."  *Id.*  Dr. Hasty recommended Lee be "refer[ed] to Southern Vitreoretinal Assoc[iation] in Tallahassee or Panama City" on a "semi urgent" basis for the retinal detachment.  ECF Doc. 73-10 at 39.

Almost three (3) months later, on March 6, 2017, Lee was seen by Dr. Ashmore at Southern Vitreoretinal Associates in Tallahassee.  ECF Doc. 23 at 7;

ECF Doc. 75-4 at 2.  Dr. Ashmore determined that Lee's left eye had "a total retinal detachment along with PVR fibrosis and the eye [had] become phthisical."  *Id.* at 7-8. Dr. Ashmore opined that "surgery [was] not recommended [because] the risks outweigh[ed] the benefits and [it] would not offer visual improvement."  *Id.*

From April 2017 to April 2018, Lee was evaluated three (3) separate times by Dr. Ashmore for complications with his right eye.  ECF Doc. 75 at 10-11; ECF Doc. 23 at 7-8.  During each of those visits, Dr. Ashmore noted there was no change in Lee's left eye.  *Id.*

On November 9, 2018, Lee was seen for a final follow up visit with Dr. Ashmore.  ECF Doc. 23 at 9.  During that visit, Dr. Ashmore concluded that Lee "suffers from 'lattice degermation in the right and left eye.'"  *Id.*

## IV.   DR. HASTY'S MOTION FOR SUMMARY JUDGMENT

Lee raises two (2) incidents of deliberate indifference as to Dr. Hasty.[2]  First, he contends Dr. Hasty was deliberately indifferent for failing to ensure Lee received a dilated retinal examination in August after his post-op visit.  Second, Lee contends

---

[2] Defendant Hasty also argues that Plaintiff claims he was negligent in performing the cataract surgery.  Plaintiff, however, has already made clear he is not alleging a separate claim of negligence.  ECF Doc. 48.  This Court also previously determined any such claim would be barred by the 2-year statute of limitations.  ECF Doc. 53 at 20.  Moreover, it is well settled that negligent conduct, even if proven, does not constitute deliberate indifference.  *Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1271 (11th Cir. 2020).

Dr. Hasty was deliberately indifferent for failing to refer Lee to a retinal specialist in July when he initially saw him, or at least, in August.

Dr. Hasty moves for summary judgment on the following grounds: (1) he did not disregard a known serious medical need, (2) his treatment was medically appropriate, and (3) his actions did not cause Lee's injury.  ECF Doc. 74.  In support of the motion, Dr. Hasty relies on his declaration, the declaration of expert Dr. Ko, and Plaintiff's medical records.  In opposition, Plaintiff relies on his declaration.

After considering the evidence, the undersigned recommends judgment be entered in favor of Dr. Hasty because the undisputed evidence shows Dr. Hasty responded reasonably to Lee's medical needs – it was reasonable, not reckless disregard, for Dr. Hasty to remove Lee's cataract, to refer Lee to have a dilated retinal exam, and to refer Lee to a retinal specialist in December.  It was reasonable for Dr. Hasty to rely on the FDOC ophthalmologist to follow his instructions.  There is simply no evidence Dr. Hasty acted with a "sufficiently culpable state of mind" or that the medical treatment he provided was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1271 (11th Cir. 2020); *Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999).

To state a claim for deliberate indifference to a serious medical need under the Eighth Amendment, Lee must allege facts sufficient to satisfy two components:

one objective and the other subjective.  *See Farmer v. Brennan*, 511 U.S. 825, 846 (1994).  To establish the objective element of his claim, Lee must present evidence sufficient to demonstrate that he suffered from a serious medical need.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  "A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1307 (11th Cir. 2009).  "[T]the medical need must be one that, if left unattended, poses a substantial risk of serious harm."  *Id.* (citing *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003)).

To satisfy the subjective component of a deliberate indifference claim, Lee must present evidence to establish that the prison officials acted with deliberate indifference to that serious need.  *Farmer*, 511 U.S. at 834.  To establish deliberate indifference, Lee must make the following sub-showings:  that Dr. Hasty had subjective knowledge of the risk of serious harm and disregarded that risk by conduct that was more than mere or even gross negligence.  *Farrow*, 320 F.3d at 1245; *Hoffer*, 973 F.3d at 1270.  A prison official acts with deliberate indifference when he "knows of and disregards an excessive risk to inmate health or safety."  *Farmer*, 511 U.S. at 837.  "The official must both be aware of facts from which the inference could be drawn . . . and he must also draw that inference."  *Id.*  Deliberate

indifference requires the defendant to have a subjective "state of mind more blameworthy than negligence," and closer to criminal recklessness. *Id.* at 835.

It is undisputed that Lee suffered from an almost complete loss of vision, cataracts in both eyes, and a suspected retinal tear when he was evaluated by Dr. Hasty in July. Thus, it is undisputed Lee suffered from a serious medical need – which satisfies the objective element of a deliberate indifference claim. *See Weston v. Estes*, 2015 WL 4999701, at *5 (N.D. Ala. Aug. 21, 2015) (finding "the cataracts in [Plaintiff's] left eye constitute[d] a serious medical need."); *Harris v. Leder*, 519 F. App'x 590, 596 (11th Cir. 2013) (finding "no dispute that [plaintiff's] traumatic injury to his right eye was an objective serious medical need"). Lee, however, has failed to present evidence to show Dr. Hasty acted with deliberate indifference to that need.

When Dr. Hasty saw Lee in July, Lee's left eye was so covered up with cataracts that Dr. Hasty could not see through the cataracts to determine whether Lee had a retinal tear. Although Dr. Hasty was concerned that Lee's loss of vision might have been caused by a pathology other than cataracts, including potentially a retinal tear, he could not confirm this suspicion without first removing the cataract. Lee agrees in his declaration that Dr. Hasty determined the best course of action was first to remove the cataract. ECF Doc. 80 at 6. Dr. Hasty does not dispute that he knew there was a chance the cataract surgery would not improve Lee's vision; the surgery

needed to be done, however, to determine if there was a tear. Lee does not dispute that removing the cataract would allow doctors to determine if there was retinal tear. Thus, Dr. Hasty recommended, and subsequently performed, the surgery.

When Dr. Hasty saw Lee on August 11, the day after the surgery was performed, he did not find a need to refer Lee to a retinal specialist, and, instead, referred Lee to see an optometrist in 1.5 weeks for a follow up and a dilated retinal exam to determine if there was a retinal tear. Lee does not dispute that Dr. Hasty "left instructions" for Lee to be evaluated as to the "condition of the retina." ECF Doc. 80 at 6. Although Lee takes issue with the fact that Dr. Hasty took no action to ensure his referral was adhered to, Lee has failed to present any evidence to show Dr. Hasty had any control over Lee's care after the post-op visit.

To the contrary, Lee agrees in his declaration that "Dr. Hasty could make recommendations for follow-up" and admits that is exactly what Dr. Hasty did. ECF Doc. 80 at 2. Lee agrees that Dr. Hasty would be involved in an inmate's post-operative care after day one, only if "the treating optometrists recommended that the patient be sent back to him for further consultation." ECF Doc. 80 at 3. Thus, unless Lee was referred back to him and the institution arranged for Lee to return to RMC to see him, Dr. Hasty would not have been involved with Lee's post-operative care. It is undisputed that Dr. Hasty did not have access to an inmate's medical records after the initial post-op visit. Thus, Dr. Hasty relied on the prison optometrists to

provide necessary postoperative care.  According to Dr. Fang Sarah Ko, Defendant's expert, it is industry practice for an ophthalmologist to rely on an optometrist to provide postoperative maintenance of a patient.  ECF. Doc. 73-2 at 3.

When this Court denied Dr. Hasty's motion to dismiss, the Court noted that "Dr. Hasty says he could properly rely on others to schedule the necessary follow-up procedures, but on the motion to dismiss, one cannot properly conclude that the fault lay only in the absence of follow-up procedures, or that, in any event, Dr. Hasty had no further responsibility to ensure those procedures took place."  ECF Doc. 62 at 3.  The evidence is now clear at the summary judgment stage that Dr. Hasty did not have that responsibility – he did not have access to Lee's medical records and he could not have seen Lee without the institution arranging for it.

Lee has also not presented any evidence to call into doubt the reasonableness of Dr. Hasty's reliance on the ophthalmologist to follow his orders.  Lee admits he "has knowledge that the FDOC facilities also utilized numerous optometrists who provided eye care to inmates" and "the optometrists are trained to perform post-operative patient eye care and management."  ECF Doc. 80 at 2.  Lee admits he "has knowledge that Dr. Hasty relied on the prison optometrist to conduct all necessary post-operative evaluations" and "communicated with optometry staff through his written notes."  *Id.* at 3.

Nonetheless, Lee concludes "it was unreasonable for Dr. Hasty to rely on optometry staff to follow up." *Id.* at 8. Such conclusion is simply conclusory and insufficient to rebut the evidence presented by Dr. Hasty. Dr. Hasty was not deliberately indifferent for relying on the optometrist to carry out his instructions. *See Wright v. Genovese*, 694 F.Supp.2d 137, 156 (N.D.N.Y.2010) (finding private surgeon who previously operated on a state prisoner, but had no control over if and when DOCS might refer plaintiff to him for follow-up care, could not be liable under Section 1983 for deliberate indifference); *Vreeland v. Fisher*, No. 13-CV-02422-PAB-KMT, 2014 WL 4854739, at *5 (D. Colo. Sept. 29, 2014), *aff'd*, 682 F. App'x 642 (10th Cir. 2017) (finding no deliberate indifference where Plaintiff presented no facts to suggest the specialist was capable of ordering the prison to refer Plaintiff for a follow-up visit).

It was not until the institution arranged for Lee to see Dr. Hasty in December 2020, that Dr. Hasty learned the retinal exam had not been performed. In fact, Dr. Hasty makes a specific notation about that failure in his notes. Upon learning Lee had not been referred for a retinal evaluation or treatment in four (4) months, Dr. Hasty recommended Lee be sent to a retinal specialist on a semi-urgent basis. Although Lee argues Dr. Hasty should have sent Lee out to a retinal specialist sooner, Lee has presented no evidence to show that Dr. Hasty knew Lee had a retinal detachment in July when saw him for his initial evaluation or in August when he

saw him first day post-op. Lee also has presented no evidence to show Dr. Hasty knew his referral had not been followed until he saw Lee again in December. As stated above, it is undisputed that Dr. Hasty did not have access to Lee's medical records after his initial post-op visit.

Regardless, even if the Court were to agree with Lee that Dr. Hasty, after having suspected a retinal tear in July, should have done more in August i.e., conducted the retinal exam himself or referred Lee to a retinal specialist, that failure would be, at best, an example of negligence, falling well short of criminal recklessness. *Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1271 (11th Cir. 2020) ("'the deliberate indifference standard ... is far more onerous than normal tort-based standards of conduct sounding in negligence,' and is in fact akin to 'subjective recklessness as used in the criminal law'"). Moreover, a dispute regarding whether Dr. Hasty should have referred Lee to a retinal specialist in July, instead of performing cataract surgery, or should have referred him to a retinal specialist in August, instead of referring him to have a retinal dilated exam, is a disagreement over the type of treatment to be provided, which does not rise to the level of a constitutional violation. *See Harris v. Thigpen,* 941 F.2d 1495, 1505 (11th Cir. 1991) ("a mere disagreement between an inmate and the prison's medical staff as to the course of treatment does not establish deliberate indifference").

The course of treatment chosen by a medical official is "a classic example of a matter for medical judgment." *Estelle,* 429 U.S. at 107. No constitutional violation exists where an inmate and prison medical official merely disagree as to the proper course of medical treatment. *Id.* at 106. Thus, Dr. Hasty's summary judgment should be granted. *See Corpus v. Teion-Wells,* 2010 WL 1793412, at *7 (M.D. Fla. May 5, 2010) (finding no constitutional violation where evidence showed doctor "did not find it medically necessary to refer Plaintiff for a second opinion with a specialist until" a later time); *Corte v. Schaffer,* 24 F.3d 237, 1994 WL 242793, at *1 (5th Cir. May 18, 1994) (finding plaintiff's claims that he was not referred to a specialist insufficient to state a claim for deliberate indifference where he was seen by "medical personnel with results being within a normal range").

## V.    CENTURION'S MOTION FOR SUMMARY JUDGMENT

Lee claims Centurion had a custom, policy or practice to delay necessary medical treatment, which caused him to go blind in his left eye. ECF Doc. 23 at 10. Centurion argues it is entitled to summary judgment because the undisputed evidence establishes that Lee's Eighth Amendment right was not violated, and even if a constitutional deprivation occurred, Lee cannot establish that Centurion's custom or policy was the moving force behind the constitutional violation. ECF Doc. 75. Centurion relies on Lee's medical records, and Lee relies on his

declaration. The undersigned finds that genuine issues of material fact exist precluding summary judgment.

Centurion, as a private entity that contracts with the state to provide medical services to inmates, is treated as a municipality for purposes of § 1983 claims. *See Buckner v. Toro,* 116 F.3d 450, 452 (11th Cir. 1997) (per curiam). A municipality can be liable under § 1983 only where the alleged constitutional harm is the result of a custom or policy. *Id.* at 452–53. Thus, to prevail, Lee must "identify a [Centurion] policy or custom that caused his injury." *McDowell v. Brown*, 392 F. 3d 1283, 1290 (11th Cir. 2004). (internal quotation marks and citations omitted). "A policy is a decision that is officially adopted by the municipality [or equivalent entity], or created by an official of such rank that he or she could be said to be acting on behalf of the municipality. . . . A custom is a practice that is so settled and permanent that it takes on the force of law." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997).

Plaintiff may satisfy this requirement by demonstrating that Centurion "adopted an official policy of, or engaged in a persistent and widespread practice of acting with, deliberate indifference to the known or obvious consequences of [their] conduct" and that the policy or practice was the "moving force" behind his injury. *See Hines v. Parker*, 725 F. App'x 801, 806 (11th Cir. 2018) (citing *McDowell*, 392 F.3d at 1290 (11th Cir. 2004)); *Craig v. Floyd County*, 643 F.3d 1306, 1310 (11th

Cir. 2011).  Importantly, Centurion is "prohibited from adopting a policy to limit care in order to cut costs." *See Brennan v. Headley,* 807 F. App'x 927, 938 (11th Cir. 2020) (citing *Hamm v. DeKalb County*, 774 F.2d 1567, 1573–74 (11th Cir. 1985)).

Centurion argues it was "not deliberately indifferent in any way" because Lee was "seen and treated by medical personnel for his eyes over twenty times" and "no medical record shows treatment was delayed or denied."  ECF Doc. 75 at 13.  The Court, however, cannot reconcile this argument with the evidence in the record, which shows several unexplained delays in getting Lee treated for the retinal detachment.

First, as discussed above, there is no evidence Lee was sent for a dilated retinal exam as ordered by Dr. Hasty.  Second, on August 23, Dr. Schlofman and Dr. Maxon recommended Lee return to Dr. Hasty for follow up, which was not done, even though the Medical Director was aware of Dr. Maxon's recommendation.  Third, on November 16, Dr. Parks directed Lee be referred to a retinal specialist "ASAP," but Lee did not go to a specialist at that time.  ECF Doc. 73-10 at 33.  Instead, one month later Lee was sent back to Dr. Hasty.  Like Dr. Parks, Dr. Hasty referred Lee to a retinal specialist and, although Dr. Hasty's referral was marked "semi-urgent," Lee did not see a specialist until almost three (3) months later.  These delays resulted in

Lee not being treated for the retinal detachment in his left eye for almost seven (7) months *after* it was first suspected and an evaluation was first recommended.

The Undersigned cannot say, given that undisputed evidence, that no reasonable jury would find Lee's Eighth Amendment rights were violated. A "defendant might be deliberately indifferent to a prisoner's specific medical needs regardless of how many doctors he sends him to for diagnosis." *Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1993) (reversing summary judgment for prison doctor where evidence showed he ignored recommendations to send plaintiff to physical therapy and, instead, sent plaintiff to different doctors for evaluations). Even where medical care is ultimately provided, a [defendant] may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs, even for a period of hours." *McElligott v. Foley*, 182 F. 3d 1248, 1255 (11th Cir. 1999). A "delay in access to medical care that is tantamount to unnecessary and wanton infliction of pain may constitute deliberate indifference to a prisoner's serious medical needs." *Brennan*, 807 F. App'x at 936 (citing *Adams v. Poag*, 61 F.3d 1537, 1544 (11th Cir. 1995)).

Centurion argues, nonetheless, that even if there was a constitutional violation, it was not caused by a custom or policy of Centurion to delay medical treatment. The Undersigned disagrees. The undisputed and unexplained delays in having Lee treated and evaluated for a retinal detachment, when it was clear from

his medical records that he had a potential for a retinal tear, at least as early as July, is sufficient to create genuine questions of fact regarding whether Centurion had a custom or policy to delay medical treatment, particularly one that involved a specialist, for non-medical reasons. *See McPherson v. Fla. Dep't of Corr.,* No. 4:19CV156-MW/MJF, 2020 WL 7017741, at *11 (N.D. Fla. July 27, 2020), *reconsideration denied sub nom. McPherson v. Corizon LLC*, No. 4:19CV156-MW/MJF, 2020 WL 7017737 (N.D. Fla. Aug. 24, 2020) (denying summary judgment in favor of Corizon because questions of fact exist as to whether there was a medical reason for Corizon's failure to provide treatment to plaintiff). As this Court has previously stated, "[i]n the absence of any other explanation, a reasonable jury could conclude" Lee's referrals were "delayed and reduced as a matter of policy." *Hurst v. Centurion of Florida, LLC, et al.*, 4:18cv237 (N.D. Fla.) at ECF Doc. 140 at 8.

Finally, Centurion argues Lee has not presented evidence to show any such custom or policy of delay caused Lee's injury. In other words, even if Lee had gone to a retinal specialist in July, it would not have made a difference because he has not shown the tear could have been repaired. In Lee's declaration, Lee states retinal specialist Dr. Ashmore has opined the delay from the time of surgery until she saw him was the cause of his injury. ECF Doc. 81 at 10. Centurion has moved to strike this statement on the grounds that it constitutes inadmissible hearsay.

In this Circuit, "[t]he general rule is that inadmissible hearsay cannot be considered on a motion for summary judgment." *Macuba v. Deboer,* 193 F.3d 1316, 1322 (11th Cir.1999) (footnote omitted) (internal quotation marks omitted). Hearsay is defined as any statement, other than the one made by the declarant while testifying, offered to prove the truth of the matter asserted. *See* Fed. R. Evid. R. 801. However, "affidavits and statements that would constitute hearsay, if reducible to admissible evidence, may be properly considered in support of a motion for summary judgment." *Saunders v. Emory Healthcare, Inc.*, 360 F. App'x 110, 112 (11th Cir. 2010).

The most obvious way hearsay testimony can be reduced to admissible form is to have the hearsay declarant testify directly to the matter at trial. *See Pritchard v. S. Co. Servs.*, 92 F.3d 1130, 1135 (11th Cir. 1996) (noting that an affidavit "can be reduced to admissible form at trial" by calling the affiant as a witness). Thus, the Court will not strike Lee's statement because he could call Dr. Ashmore to testify at trial, which would make Dr. Ashmore's statement admissible. The Undersigned also notes that in Dr. Ashmore's records she determined the benefits of surgery were outweighed by the risk because Lee had a total retinal detachment at that time. There is no evidence, however, of when the total detachment took place. The Undersigned, therefore, finds a genuine issue of material fact exists as to causation.

Accordingly, it is ORDERED: Defendants' motions to strike (ECF Docs. 82, 83) are DENIED.

It is further respectfully RECOMMENDED that:

1.    Defendant Dr. Hasty's Motion for Final Summary Judgment (ECF Doc. 74) be **GRANTED**, and judgment entered in his favor.

2.    Defendant Centurion of Florida, LLC's Motion for Summary judgment (ECF Doc. 75) be **DENIED**.

Done at Pensacola, Florida this 31st day of August, 2021.

_s/ Hope Thai Cannon_

**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**


NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within 14 days of the date of this Report and Recommendation. Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. A copy of objections shall be served upon the Magistrate Judge and all other parties. A party failing to object to a Magistrate Judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.